**Jesse Cruz HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–96–00824–CR.

Court of Appeals of Texas, San Antonio.

Feb. 25, 1998.

Julie Pollock, Hitchings, Pollock & Bernard, San Antonio, for Appellant.

Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

STONE, Justice.

This appeal arises from Jesse Cruz Hernandez's jury conviction for capital murder. Following its determination of guilt, the jury sentenced Hernandez to life imprisonment. Hernandez appeals his conviction contending that: (1) the evidence is factually insufficient to show that the murder occurred during the course of an aggravated robbery; (2) the trial court erred by failing to instruct the jury on the law of self defense; (3) the trial court erred by failing to instruct the jury on

the lesser included offense of voluntary manslaughter; (4) the trial court erred by failing to instruct the jury on the lesser included offense of aggravated assault; (5) he is entitled to a new trial because part of the record has been lost or destroyed without his fault; (6) he is entitled to a new trial because the trial court failed to comply with the mandate of TEX.R.CRIM. EVID. 508(c)(3). We affirm the trial court's judgment.

## FACTUAL BACKGROUND

At approximately 2:00 a.m. on June 14, 1994, Hernandez, along with Victor Escobedo, stole a GMC pickup truck belonging to Walter and Linda Tribbitt with the intent to remove the tires and rims. Escobedo broke into the truck and started it as Hernandez got into the passenger seat. As the two left the Tribbitts' apartment complex in the stolen truck, Walter Tribbitt returned from work, saw the two in his truck, and began pursuit.

In his written statement to police, Hernandez stated that Walter Tribbitt drove up behind them, flashed his lights, and then rammed the stolen truck. Hernandez stated that Tribbitt pulled beside the two, locking the two vehicles together. Hernandez thought Tribbitt reached for a gun, so Hernandez shot at Tribbitt, striking him twice in the face. Tribbitt lost control of his vehicle and struck a nearby apartment building. Escobedo stopped the stolen truck a short distance from the apartment where Tribbitt crashed. Hernandez and Escobedo abandoned the stolen truck and escaped by getting into another pickup truck that had stopped to pick them up. A subsequent search of Tribbitt's vehicle uncovered no weapons. Following his apprehension, Hernandez was charged by indictment that he did "intentionally cause the death of Walter Tribbitt, III by shooting Walter Tribbitt III with a deadly weapon, namely: a handgun and Jesse Cruz Hernandez did then and there intentionally cause the death of Walter Tribbitt III while in the course of committing and attempting to commit the offense of robbery of Walter Tribbitt III."

## DISCUSSION

▆ In his first point of error, Hernandez contends that the evidence is factually insufficient to show that the murder occurred during the course of an aggravated robbery. Hernandez argues that the State failed to prove a sufficient nexus between the underlying theft of the pickup truck and the murder of Tribbitt and, therefore, the evidence was insufficient to prove that he committed robbery, and thereby, capital murder. Hernandez argues that the theft of the truck was complete prior to Tribbitt's murder. Because the murder and the theft were two separate incidents, Hernandez contends that the murder did not occur during the immediate flight of the theft and did not occur to facilitate the taking of property.

▆ In conducting a factual sufficiency review, we must review all the evidence and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). Factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict was legally sufficient. *Id.*

A person commits the offense of capital murder if he intentionally and knowingly causes the death of an individual while in the course of committing or attempting to commit certain delineated felonies, including robbery. TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 1994). Robbery is the act of intentionally, knowingly, or recklessly causing bodily injury while in the course of committing a theft with the intent to obtain or maintain control of property. TEX. PENAL CODE ANN. § 29.02 (Vernon 1994). The robbery statute defines the phrase "in the course of committing theft" as "conduct which occurs in an attempt to commit, during the commission, or in immediate flight after the commission of...." *Id.* at § 29.01(1)(Vernon 1994). The phrase "in the course of committing," as used in the capital murder statute, has the same meaning as the term used and defined in the robbery statute. *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim.App.1986); *see* TEX. PENAL CODE ANN. § 29.01(1).

■ Because a killing and unrelated taking of property do not constitute capital murder under Section 19.03(a)(2), to obtain conviction for capital murder, the State "must prove a nexus between the murder and the theft, i.e. that the murder occurred in order to facilitate the taking of the property." *Ibanez*, 749 S.W.2d at 807. Therefore, the State was bound to prove, beyond a reasonable doubt, that Hernandez committed the murder during the commission of the underlying theft, or while in immediate flight, with intent to obtain or maintain control of the property. *See id.* If a jury could rationally conclude that the Appellant formed the intent to obtain control of the victim's property before or during the commission of the murder, the evidence will support a conclusion that the murder occurred in the course of robbery. *Zimmerman v. State*, 860 S.W.2d 89, 93 (Tex.Crim.App.), *vacated on other grounds*, 510 U.S. 938, 114 S.Ct. 374, 126 L.Ed.2d 324 (1993); *Dillard v. State*, 931 S.W.2d 689, 696 (Tex.App.—Dallas 1996, pet. ref'd, untimely filed).

The evidence reveals that Hernandez and Escobedo, with David Franklin, the driver of the "getaway car," conspired to steal a car to remove its tires and rims. Hernandez took a loaded handgun with him. Escobedo broke into the Tribbitts' truck to drive it away, while Hernandez got in the passenger seat. Neither of the two had permission to drive the truck. Detective David Torres testified that the distance from the Tribbitts' apartment to the place where Tribbitt was murdered was "a little over a mile." Other evidence from Officer Peeler revealed that the distance was "not more than two miles." Testimony from Escobedo's sister, Melissa Melendez, revealed that Escobedo called her after the incident and asked her and her husband to meet him at his house. Upon arriving, Melendez spoke with Hernandez who told her that he believed that the person pursuing them was the owner of the truck. Melendez stated that Hernandez admitted shooting Tribbitt because Tribbitt had clearly seen them and could identify them. Hernandez also told her that he thought that Tribbitt reached under the seat and pulled up a gun "that looked like a semi-automatic pistol." Hernandez told her that he fired at Tribbitt six to ten times and that he saw a bullet go through Tribbitt's head. Hernandez stated to her that he was sure he killed Tribbitt, and he repeated continuously that "he killed a man that night."

■ Hernandez's argument fails because the definition of "in the course of committing theft" encompasses conduct that occurs during immediate flight. From the circumstances, a reasonable jury could conclude that Hernandez and Escobedo were leaving the scene of the theft of the truck when they were interrupted by Tribbitt, and Hernandez formed the intent to maintain control of Tribbitt's truck during the commission of the murder. Therefore, the evidence will support a conclusion that the murder occurred in the course of robbery. *See Zimmerman*, 860 S.W.2d at 93; *Dillard*, 931 S.W.2d at 696. A reasonable juror could have also concluded that the two incidents were related. Hernandez stated to Melendez that he shot at Tribbitt because Hernandez could identify him and because he thought Tribbitt was the owner of the truck. Therefore, the jury heard evidence from which it could conclude that Hernandez shot at Tribbitt in an effort to "obtain or maintain control of the property."

After reviewing all the evidence, we hold that there was evidence from which a rational jury could conclude that Hernandez formed his intent to maintain control of the stolen truck during his commission of the murder. *See Zimmerman*, 860 S.W.2d at 93. Therefore, the jury's verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 134. Point of error one is overruled.

■ In his second point of error, Hernandez contends that the trial court erred by failing to instruct the jury on the law of self-defense. Hernandez argues that he was entitled to a jury instruction on self-defense because he showed that he was justified in defending himself against use of force which he reasonably believed to be unlawful. Because it could be inferred that Hernandez did not know the identity of Tribbitt at the time Hernandez used deadly force, he argues that

he "may have acted in justifiable self-defense even though the deceased might have been acting lawfully to protect [the deceased's] property."

When properly requested, a defendant is entitled to a jury charge on every defensive theory raised by the evidence, regardless of the strength of the evidence or whether it is controverted. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987); *see Biegajski v. State*, 653 S.W.2d 624, 629 (Tex.App.—San Antonio 1983, pet. ref'd). A defendant's testimony alone may be sufficient to raise a defensive theory requiring a jury instruction. *Dyson v. State*, 672 S.W.2d 460, 463 (Tex.Crim.App.1984).

The use of deadly force is justified in self-defense only when three conditions are present: (1) the defendant would have been justified in using force under TEX. PENAL CODE ANN. § 9.31; (2) a reasonable person in the defendant's position would not have retreated; and (3) the use of deadly force was reasonably believed to be immediately necessary to protect the defendant against another's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32 (Vernon Supp.1998); *see Riddle v. State*, 888 S.W.2d 1, 6 (Tex.Crim.App. 1994), *cert. denied*, 514 U.S. 1068, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995). In the absence of evidence of use or attempted use of deadly force by the victim, the section 9.32 defense is not available and the accused is not entitled to a jury instruction on self-defense. *Werner v. State*, 711 S.W.2d 639, 644 (Tex.Crim.App.1986); *Hernandez v. State*, 946 S.W.2d 108, 114 (Tex.App.—El Paso 1997, no pet.). However, a self-defense instruction should not be precluded if the defendant reasonably perceives that he is in danger, even though that perception is incorrect. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App.1996). "Generally, a person committing the offense of robbery has no right of self-defense against his intended victim." *Dillard*, 931 S.W.2d at 697, citing *Davis v. State*, 597 S.W.2d 358, 360 (Tex. Crim.App.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed.2d 238 (1980).

Hernandez's argument fails for several reasons. As discussed above, the evidence revealed that Hernandez committed robbery and killed Tribbitt in the commission of this robbery. Following *Davis* and *Dillard*, Hernandez had no right of self-defense against his intended robbery victim. *See Davis*, 597 S.W.2d at 360; *Dillard*, 931 S.W.2d at 697. Second, Hernandez failed to produce evidence to raise self-defense. Hernandez offered evidence only that he **thought** that Tribbitt was reaching for a gun. Hernandez offered insufficient evidence that he reasonably perceived that he was in danger. Hernandez offered no evidence that Tribbitt in fact had a weapon or attempted to use deadly force. In fact, a subsequent search of Tribbitt's vehicle uncovered no weapons. Hernandez cannot rely on Tribbitt's use of the truck as use of deadly force to justify his own use of deadly force because acting as a reasonable person in that situation, Hernandez should have retreated or attempted to retreat. *See Riddle*, 888 S.W.2d at 6–7; *see also* TEX. PENAL CODE ANN. § 9.32(a)(2)(Vernon Supp.1998). The evidence did not show that Hernandez could not retreat or that he attempted to retreat but Tribbitt prevented him from doing so. Therefore, Hernandez was not justified in his use of deadly force. *See Riddle*, 888 S.W.2d at 6–7. Absent any showing that Tribbitt used or attempted to use deadly force, self-defense is not available to Hernandez, and he is not entitled to a jury instruction on self-defense. *See Werner*, 711 S.W.2d at 644; *Hernandez*, 946 S.W.2d at 114. Finally, Hernandez's argument fails under the third prong of the Section 9.32 test because Tribbitt's actions were justified and lawful. *See* TEX. PENAL CODE ANN. §§ 9.41, 9.42 (Vernon 1994). Whether Hernandez knew of Tribbitt's specific identity at the time he killed him is irrelevant to the analysis of whether he reasonably believed the use of deadly force was immediately necessary to protect himself against another's use of **unlawful** deadly force. Hernandez offered no evidence that any use of deadly force by Tribbitt was unlawful. Hernandez's second point of error is overruled.

In his third point of error, Hernandez contends that the trial court erred by

failing to instruct the jury on the lesser included offense of voluntary manslaughter. Hernandez argues that he was entitled to a jury instruction on the lesser included offense of voluntary manslaughter because in his statement to police, he asserted that Tribbitt "rammed" the truck; that "everything was happening very fast;" he thought that Tribbitt was reaching for a gun; and, that he was afraid Tribbitt was going to shoot them or run them off of the road.

In determining whether a jury must be charged on a lesser included offense, a two-step analysis is applied. The court must first determine that the lesser included offense is included within the proof necessary to establish the offense charged. *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App. 1985); *Royster v. State,* 622 S.W.2d 442, 444 (Tex.Crim.App.1981). Second, "some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State,* 855 S.W.2d 666, 673 (Tex.Crim.App.)(emphasis in original), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). A defendant is entitled to a charge on a lesser included offense if any evidence supports the charge, regardless whether the supporting evidence is contradicted. *Lugo v. State,* 667 S.W.2d 144, 146 (Tex.Crim.App.1984). All of the evidence adduced at trial should be considered in determining whether an instruction on a lesser included offense should be given. *Id.* at 147.

A jury charge on voluntary manslaughter is appropriate when there is evidence that the defendant caused the death under the "immediate influence of sudden passion arising from adequate cause." TEX. PENAL CODE ANN. § 19.04(a)(Vernon 1994). However, when the defendant "initiates the criminal episode which leads to the victim's death and the victim was acting in an attempt to prevent the commission of the felony by the defendant, the victim's actions will not be viewed as constituting adequate cause from which sudden passion may arise for purposes of voluntary manslaughter." *Adanandus v. State,* 866 S.W.2d 210, 231

(Tex.Crim.App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994).

Hernandez's argument fails because he initiated the criminal episode which lead to Tribbitt's death, and Tribbitt was acting in an attempt to prevent the theft of his truck. Therefore, Tribbitt's actions did not constitute adequate cause from which sudden passion could arise for purposes of voluntary manslaughter. *See id.* Therefore, the trial court did not err by failing to include a jury instruction on such lesser included offense. Hernandez's third point of error is overruled.

In his fourth point of error, Hernandez contends that the trial court erred by failing to instruct the jury on the lesser included offense of aggravated assault. Hernandez argues that he was entitled to a jury instruction on the lesser included offense of aggravated assault because the evidence showed that he shot blindly into the truck, not intending to kill Tribbitt.

A person commits aggravated assault if the person intentionally, knowingly, or recklessly causes serious bodily injury to another or the person uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a) (Vernon 1994). Aggravated assault is a lesser included offense of capital murder. *Dowden v. State,* 758 S.W.2d 264, 269 (Tex.Crim.App.1988). The State proved the elements of aggravated assault within its proof of the alleged offense of capital murder. Therefore, the first prong of the lesser-included-offense analysis is satisfied. *See Aguilar,* 682 S.W.2d at 558.

Under the second prong, if any evidence produced at trial would permit a jury to find that Hernandez intended to cause serious bodily injury, but did not intend to kill Tribbitt, Hernandez would have been entitled to a jury instruction on aggravated assault. *See Rousseau,* 855 S.W.2d at 674. However, in analyzing the evidence under the second prong,

[t]here is no requirement in the case of capital murder committed in the course of a robbery, that the intent to cause death be premeditated or formulated prior to the commission of the robbery. The offender

must only have formulated an intent to cause death when he actually commits the murder. *Id.* at 674. A jury charge on aggravated assault "would be required only if testimony was introduced from sources indicating a lack of *intent* on the part of appellant to kill the deceased." *Dowden v. State*, 758 S.W.2d 264, 269 (Tex.Crim.App.1988)(emphasis included in original).

The trial evidence showed that Hernandez fired into Tribbitt's truck because he thought that Tribbitt would be able to identify him and Escobedo, because he thought that Tribbitt was the owner of the truck they were attempting to steal, and because he though that Tribbitt was attempting to pull a gun. In his written statement to police, Hernandez states that "I thaught [sic] that I only hit the truck." However, Melendez testified that Hernandez told her shortly after the incident that "he saw a bullet go through the other man's head" and repeated continuously that "he killed a man that night." Although Melendez testified that Hernandez "fired blindly in the other truck," Melendez also testified that Hernandez told her that he aimed into the cab of the truck. Melendez also testified that Hernandez told her he fired 6 to 10 shots into the truck.

Hernandez's argument fails under the second prong of the lesser-included-offense test because Hernandez failed to show that if he was guilty, he was guilty only of aggravated assault. Melendez's testimony shows that Hernandez shot Tribbitt to enable him to commit the theft of the truck and to prevent capture. The lesser offense of aggravated robbery consists of intentionally causing bodily injury while committing theft which results in serious bodily injury, or using or exhibiting a deadly weapon while committing theft. TEX. PENAL CODE ANN. §§ 29.02, 29.03 (Vernon 1994). Therefore, while the evidence may tend to prove that Hernandez might be guilty of a lesser offense it did not show that offense to be **only** aggravated assault because of the underlying theft involved.

Hernandez supports his argument with *Sledge v. State*, 860 S.W.2d 710, 713 (Tex. App.—Dallas 1993, pet. ref'd). In *Sledge*, the appellant, a member of a gang, fired several shots into a crowd of people composed of an opposing gang to "let them know that he would shoot someone if they tried to hurt him." *Id.* at 712. The appellant killed one of the people in the crowd and was convicted of murder. *Id.* The court held that the trial court erred in failing to give a jury charge on aggravated assault because the record reflected that the appellant lacked the intent to kill. The *Sledge* court cited *Castillo v. State*, 686 S.W.2d 377, 378 (Tex.App.—San Antonio 1985, no pet.), in which this court held that the defendant was entitled to a jury charge on aggravated assault when the evidence reflected that the defendant fired a weapon because he was afraid the deceased would shoot him and that he was not intentionally trying to kill the deceased. *See Sledge*, 860 S.W.2d at 714.

The present case is distinguishable from *Sledge* and *Castillo* because both decisions were based on circumstances in which there was no underlying theft and because evidence in the record reflected that the defendants lacked the intent to kill someone. *See Sledge*, 860 S.W.2d at 713; *Castillo*, 686 S.W.2d at 378. The evidence in this case shows that Hernandez acted with intent to kill Tribbitt during the commission of a theft. Any evidence that Hernandez "shot blindly" into the truck or that he thought he hit only the truck is not evidence that he lacked the intent to kill Tribbitt. *See Rousseau*, 855 S.W.2d at 674–75. Consequently, there is no evidence to support the second prong of the test, namely, that there is some evidence in the record showing that if Hernandez is guilty, he is guilty only of aggravated assault. This evidence reflects that Hernandez formulated the intent to cause Tribbitt's death by firing at him. *See id.* Hernandez's fourth point of error is overruled.

■ Hernandez's fifth and sixth points of error result from Hernandez's pre-trial request for the disclosure of an informant's identity and relevant information. The trial court denied the request. Hernandez requested under TEX.R. EVID. 508(c)(2) that the trial court conduct an in-camera hearing to determine whether it was necessary for the informant to give testimony necessary to a

fair determination of Hernandez's guilt or innocence. Hernandez requested that any findings and documents considered on this request be sealed and made a part of the record. The trial court granted this request. The issue was again addressed at trial, before a different judge, because no such sealed findings and documents had been entered. On appeal, Hernandez filed in this court a Motion to Abate Appeal and Motion to Amend Record requesting, among other things, that this court order the district clerk to file a sealed supplemental transcript containing the sealed documents that the trial court considered in denying Hernandez's motion to require disclosure of the State's informant. This court so ordered the district clerk to file a sealed supplemental transcript. This court received an affidavit from Mary White, Deputy District Clerk, stating that "if in fact there is sealed information, it was never relinquished to the Clerk of the Court." Ms. White stated that she questioned the court reporters about any sealed information, and they stated to her that they were "unaware and are not in possession of any such sealed information."

Hernandez does not argue that the trial court erred by denying his motion requesting the informant's identity or that the missing record is necessary to the resolution of any points of error raised on appeal. Hernandez argues only that he is entitled to a new trial because part of the trial record is missing or lost without his fault and he exercised due diligence in requesting that such portion of the record be provided.

An appellant is entitled to a new trial if he has timely requested a reporter's record; a significant portion of the records are lost or destroyed without appellant's fault; the lost portion of the record is necessary to the appeal's resolution; and the parties cannot agree on a complete reporter's record. TEX. R.APP. P. 34.6(f).[1] A court of appeals must disregard any error, defect, irregularity, or variance in the appellate record that does not affect substantial rights. TEX.R.APP. P. 44.2(b). A court of appeals may not reverse

a judgment or dismiss an appeal if the trial court's erroneous failure or refusal to act prevents the proper presentation of a case to the court of appeals and the trial court can correct its action or failure to act. TEX. R.APP. P. 44.4(a).

Hernandez has not shown that the requested record exists. However, assuming that the requested record does exist, Hernandez's argument must fail under the appellate rules. Hernandez has not shown how the alleged "lost" portion of the record is necessary to the resolution of his appeal or that the parties cannot agree on a complete reporter's record. See TEX.R.APP. P. 34.6(f). Because Hernandez does not argue that the trial court erred in denying his motion to disclose the informant's identity, any variance or defect in the appellate record regarding the documents considered by the trial court does not affect Hernandez's substantial rights and does not prevent the proper presentation of the case to this court. See TEX. R.APP. P. 44.2(b), 44.4. Points of error five and six are overruled.

The judgment of the trial court is affirmed.

---

1. The amended Texas Rules of Appellate Procedure are applicable to this proceeding, as this appeal was pending at the time the amended rules became effective. *See* Order of Final Approval, in the Court of Criminal Appeals of Texas, § 2 (Aug. 15, 1997).