MEMORANDUM OPINION

No. 04-05-00473-CR

Mary Cruz CANTU,

Appellant

v.

The STATE of Texas ,

Appellee

From the 381st Judicial District Court, Starr County, Texas

Trial Court No. 04-CR-651

Honorable John A. Pope, III , Judge Presiding




Opinion by: Alma L. López, Chief Justice



Sitting: Alma L. López, Chief Justice

 Catherine Stone , Justice

 Sarah B. Duncan , Justice



Delivered and Filed: September 6, 2006



AFFIRMED

 Mary Cruz Cantu appeals her aggravated robbery conviction asserting: (1) the trial court erred in denying a motion for
mistrial based on prosecutorial misconduct during closing argument; (2) the trial court abused its discretion in denying her
application for community supervision; (3) the evidence is legally and factually insufficient to corroborate the accomplice
witness testimony; (4) the trial court erred in entering a deadly weapon finding; (5) the State failed to disclose favorable
impeachment evidence; (6) the trial court erred in precluding relevant cross-examination; and (7) trial counsel was
ineffective in failing to timely file his election for punishment by the jury. We affirm the trial court's judgment.

1. Cantu's first complaint relates to the following argument made by the State which is set forth in context:

 (REPORTER'S NOTE: At this time the Reporter made a note that Mr. David Garza [Cantu's attorney] had left the
proceedings at about the time that Mr. Marcos Trevino started to make his final closing argument).



 MR. TREVINO: Mr. Garza wants you to fill in the blanks. Ladies and gentlemen, you're smart people, yes, fill in the
blanks.

 Mr. Garza wants you to believe that this woman was not charged with anything. That's not true. He doesn't know that's
true or not. For all we know, she could have a hundred charges, but you're not allowed to hear that. Maybe she doesn't have
- maybe she just has this one, but you're not allowed to hear that, ladies and gentlemen. But I submit to you, maybe she has
some other charges. Mr. Garza was lying to you when he said that. He doesn't know.



 MR. GARZA: Your Honor -



 MR. TREVINO: Ladies and gentlemen -



 MR. GARZA: May I approach the bench -



 THE COURT: Yes, sir.



 (WHEREUPON, thereafter a discussion was held at the bench off the record).



 THE COURT: Mistrial denied. Let's go ahead. Continue.



 (REPORTER'S NOTE: Mr. David Garza reappeared about the time that Mr. Marcos Trevino was finishing the last paragraph).



After the record was filed in this appeal, Cantu filed a motion challenging the accuracy of the reporter's record. 
Specifically, Cantu challenged the above-quoted portion of the record stating that "a discussion was held at the bench off
the record." In response to Cantu's motion, we abated the appeal to the trial court for a hearing to determine the accuracy of
the record.

 At the hearing regarding the record, the court reporter testified that his official record is his stenographic notes and he "did
that to the best of my skill and ability and my hearing capabilities." The court reporter stated that he did not hear what
occurred during the bench conference. The tape back-up (1) that the court reporter was using recorded a significantly lesser
portion of the record than the portion the court reporter was able to hear. (2) The court reporter explained that during closing
argument, he does not sit where the court reporter normally sits because the attorney's back would be to him and he could
not hear. Instead, he sits on the jury bench table which is about ten feet or so from where the bench conferences occur. The
court reporter explained that he noted when Mr. Garza left the courtroom in his notes because "to me, that was very
important because he left his client here while the State was giving their final closing." The court reporter further explained
that when Mr. Garza re-entered the courtroom and approached the bench, "I rushed up here. He didn't give me enough time,
and I just punched - I thought I had hit the recorder to play. When I go back, I find out that not even . . . Mr. Trevino's
closing argument is on the tape." The following exchange then occurred during cross-examination:

 Q. [Mr. Garza]: Mr. Alderete, did Judge Pope tell you to go off the record?

 A. No. You didn't give me a chance to get on the record either.

 Q. To get on the record?

 A. Yes, sir.

 Q. Isn't it your job - weren't you here from day one of the trial to record the transcript of the testimony?

 A. Exactly, and that's what I did. What I could hear, I did. What I could hear.



In her supplemental brief, Cantu contends that she is entitled to a new trial under rule 34.6(f) of the Texas Rules of
Appellate Procedure based on the absence of the record from the bench conference. See Tex. R. App. P. 34.6(f) (setting
forth conditions under which appellant is entitled to a new trial where record is lost or destroyed). Because Cantu did not
object to the court reporter's failure to record the bench conference, however, Cantu has failed to preserve this complaint for
our review. (3)See Valle v. State, 109 S.W.3d 500, 508-09 (Tex. Crim. App. 2003); see also Walthall v. State, 594 S.W.2d
74, 81 (Tex. Crim. App. 1980) (requiring appellant to object if the bench conferences were not held within the hearing on
the reporter or recorded by her). Furthermore, rule 34.6(f) would entitle Cantu to a new trial only if a necessary portion of
the record was lost or destroyed. "When the complaining party cannot show that the court reporter ever recorded the
missing proceedings, he is not entitled to a new trial" under the rule. (4) Williams v. State, 937 S.W.2d 479, 486-87 (Tex.
Crim. App. 1996); see also Jones v. State, 942 S.W.2d 1, 2 (Tex. Crim. App. 1997); Hernandez v. State, 969 S.W.2d 440,
448 (Tex. App.--San Antonio 1998, pet. ref'd) (noting appellant failed to show the requested record existed).

 Cantu also contends that the trial court erred in denying her motion for mistrial because this court should at least infer that
Cantu's attorney moved for a mistrial based on the trial court's ruling. Cantu asserts that a motion for mistrial alone is
sufficient to preserve error if the prejudice arising from improper argument is incurable, citing Thompson v. State, 89
S.W.3d 843, 851 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd). In Thompson, however, the court noted that the
appellant objected to the argument and requested a mistrial, only failing to request an instruction to disregard. See id. at
851.

 In Young v. State, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004), the Texas Court of Criminal Appeals explained when a
motion for mistrial alone would be sufficient to preserve error. The court stated that if an instruction to disregard could not
have cured the harm, "the only suitable remedy is a mistrial, and a motion for mistrial is the only essential prerequisite to
presenting the complaint on appeal." Id. "[W]hen a party's first action is to move for mistrial, as this appellant's was, the
scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of
ending the trial; in other words, an event that could have been prevented by timely objection or cured by instruction to the
jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request these lesser
remedies in the trial court." Id. Recognizing the potential for abuse of a rule allowing a motion for mistrial to preserve
error, the court cautioned:

 If a party delays motion [sic] for mistrial, and by failing to object allows for the introduction of further objectionable
testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial
than on an untimely objection.



Id.

 In this case, Cantu's attorney, Mr. Garza, did delay in moving for the mistrial because he voluntarily absented himself from
the counsel table and elected to move to a portion of the courtroom that was not visible to the judge, the court reporter, or
the jury. Because of this, Mr. Garza did not immediately object when the State began referring to other possible charges. 
Mr. Garza further failed to object when the State referred to the hundred charges Cantu could have against her, informed the
jury that it was not allowed to hear about them, or speculated that she may have other charges. Instead, Cantu's attorney did
not request to approach the bench until the prosecutor stated that Mr. Garza was lying. Because Mr. Garza's actions in
absenting himself from the counsel's table in the courtroom delayed the motion for mistrial and allowed the State to
introduce further objectionable comments, Cantu cannot rely on the untimely motion for mistrial to preserve error. Young,
137 S.W.3d at 70. 

 Moreover, considering the record as a whole, we believe that a prompt instruction to disregard would have cured this
isolated reference to additional charges in the context in which the statement was made. The State referred to possible
charges that Cantu may or may not have. A prompt instruction to disregard would have cured whatever harm resulted from
the State's reference to other possible charges. See Corwin v. State, 870 S.W.2d 23, 36-37 (Tex. Crim. App. 1993) (holding
instruction to disregard cured argument inviting jury to speculate as to unproven past misconduct involving additional
possible murders); Jones v. State, 900 S.W.2d 397, 398 (Tex. App.--San Antonio 1995, pet. ref'd) (holding instruction
would cure argument inviting jury to speculate about unindicted offenses).

2. Cantu asserts that the trial court abused its discretion in denying her application for community supervision. Cantu's
application was not filed until after voir dire. Accordingly, the application was not timely filed, and the trial court did not
err in refusing to consider it. See Wyle v. State, 777 S.W.2d 709, 716 (Tex. Crim. App. 1989); Noyola v. State, 25 S.W.3d
18, 22 (Tex. App.--El Paso 1999, no pet.). 

3. Cantu challenges the legal and factual sufficiency of the evidence to corroborate the accomplice witness testimony. In
conducting a sufficiency review under the accomplice-witness rule, a reviewing court must eliminate the accomplice
testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that
tends to connect the accused with the commission of the crime. Cornish v. State, 172 S.W.3d 676, 679 (Tex. App.--San
Antonio 2005, no pet.). Because the standard is "tendency to connect," rather than a rational sufficiency standard, the
corroborating evidence need not be sufficient by itself to establish guilt. Id. If the combined weight of the non-accomplice
evidence tends to connect the defendant to the offense, the evidence is sufficient. Id. The court may consider all facts and
circumstances to establish corroboration and the corroborative evidence may be circumstantial or direct. Id. Each case
must be considered on its own facts and circumstances. Id. Evidence that proves merely the commission of the offense is
insufficient to meet the standard. Id.

 Rogelio Hernandez, the accomplice witness, testified that he met Cantu when he installed a piece of glass to repair a
window in her apartment. Cantu called Hernandez a few days later asking if he wanted to rob a house. Hernandez stated
that Cantu was the mastermind of the plan to rob the victim. Hernandez, Cantu, and Hector Mendez Isaias Gomez hid at
the victim's house. They were wearing masks. The victim and a young man arrived at the house. When the victim arrived,
Gomez attacked the victim, and Hernandez and Cantu attacked the young man. Cantu grabbed the gun the victim was
carrying. They went inside the victim's house, and Gomez and Cantu took the victim and the young man upstairs to "tape
them up." When the three split up the items that were stolen, Cantu kept the gun the victim had been carrying and put it
under a mattress at her apartment.

 The following evidence tends to connect Cantu with the aggravated robbery. The victim testified that he was robbed by
two men and one woman who were wearing masks. The victim testified that the woman picked up the gun he was carrying
when he put it down. The victim testified that Cantu taped him with duct tape. The victim's gun was recovered under a
mattress in Cantu's apartment. Accordingly, given the consistencies between the victim's testimony and the accomplice
testimony in describing the events and the recovery of the gun, the evidence was sufficient to corroborate Hernandez's
testimony.

4. Cantu contends that the trial court erred in entering a deadly weapon finding. Because the indictment charged Cantu with
aggravated robbery which requires proof of the use or exhibition of a deadly weapon as an element of the offense, the trial
court did not err in entering the deadly weapon finding after the jury found Cantu guilty as charged in the indictment. Bell
v. State, 169 S.W.3d 384, 398 (Tex. App.--Fort Worth 2005, pet. ref'd); Sarmiento v. State, 93 S.W.3d 566, 570 (Tex.
App.--Houston [14th Dist.] 2002, pet. ref'd).

5. Cantu contends that her due process rights were violated when the State failed to disclose information regarding
Hernandez that could have been used to impeach him. A due process violation occurs if a prosecutor: (1) fails to disclose
exculpatory or impeachment evidence; (2) favorable to the accused; and (3) the evidence is material, that is, there is a
reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. Hampton v.
State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). The defendant bears the burden of showing that, in light of all the
evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely
disclosure. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Wyatt v. State,
23 S.W.3d 18, 27 (Tex. Crim. App. 2000). The mere possibility that an item of undisclosed information might have helped
the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. 
Hampton, 86 S.W.3d at 612.

 In this case, the evidence the State failed to disclose was an informal arrangement that the State either would consider a
sentence of between two to five or six years if Hernandez testified truthfully or that if Hernandez "was truthful and honest
and cooperative in his transactions with the State that they would take both [sic] of that into consideration." From the
following testimony, it is unclear exactly what the nature of the "informal" offer made by the State was:

 Q. . . . Did you talk to the District Attorney's office about a plea bargain with Rogelio Hernandez?

 A. Yes.

 Q. What did they offer?

 A. I think nothing has been finalized yet.

 Q. What - was their unofficial offer?

 A. Yes, there was an unofficial offer made.

 Q. What was it?

 A. Some good time, good sentence, in my opinion.

 Q. A good time, a good sentence, how many years?

 A. Well, anywhere from two to five, six years.

 Q. Two to five or six years with your firm understanding before he testified that it was going to be within that range?

 A. Correct.

 Q. As long as he sang like a bird?

 A. I wouldn't call it that way. As long as he spoke the truth, and we clarified some matters, correct. But I wouldn't say he
sang like a bird.

 Q. As long as he testified truthfully?

 A. Correct.

 Q. Now, you're not mistaken they made you that offer anywhere between two years, nothing firm as five years, period, but
it could have been between two and six, isn't that what you said?

 A. To the best of my recollection, yes.

 Q. Did he understand that?

 A. Who is we?

 Q. He, Rogelio Hernandez, Jr.?

 A. I communicated -



 MR. TREVINO: I object. That' s speculation.

 THE COURT: Sustained



 BY MR. GARZA

 Q. For a first degree felony, two to six years?

 MR. TREVINO: Your Honor, I'm going to object to this. Relevance, Your Honor.

 THE COURT: I don't know he didn't finish his questions. Overruled.

 BY MR. GARZA

 Q. Were you aware that your client testified that no deal had been offered?

 A. I think he meant in my personal opinions [sic] since we haven't seen nothing yet in writing. It's not firm, in my personal
opinion.

 Q. So, he was telling the truth but just didn't understand my question?

 A. In my opinion, that is true.

 Q. But the truth is, that you met prior to his testimony and the Assistant District Attorney in the office of the 229th District
Attorney told you in your face, "Yes, we'll consider and make an offer of between two and six if he turned State's witness?"

 A. I wouldn't say if he turned state's witness, but if he cooperated and was truthful and honest.



 MR. GARZA: Pass the witness.

 THE COURT: Mr Trevino.



 CROSS-EXAMINATION BY MR. TREVINO

 Q. Mr. Florencio [sic], there was no dealing between the District Attorney's office and your client, is that correct?

 A. There is nothing in writing, that's correct.

 Q. And there is no final deal, is that correct?

 A. That is correct.

 Q. What was the deal that the State made with you Mr. Lopez?

 A. The State asked me to ask my client if he was truthful and honest and cooperative in his transactions with the State that
they would take both [sic] of that into consideration. Nothing passed or ever been put in writing.



Although this testimony meets the first and second prongs of the test for a due process violation, we do not believe the
evidence is material. The suggestion that Hernandez was testifying for a reason other than to reveal the truth was before the
jury. Although the existence of an informal offer that Hernandez would either receive a light sentence or his cooperation
would be taken into consideration could possibly have assisted the defense, it does not give rise to a reasonable probability
that the outcome of the trial would have been different or undermine our confidence in the outcome. Hampton, 86 S.W.3d
at 612.

6. Cantu contends that the trial court abused its discretion in precluding relevant cross-examination. It appears that Cantu's
complaint is directed at the trial court's refusal to allow her attorney to cross-examine Hernandez regarding other robberies
for which he had been arrested or indicted. Cantu did elicit testimony from Hernandez that he previously had been
convicted of a drug offense.

 A trial court may exclude or admit evidence before the jury, and an appellate court will not set aside the trial court's rulings
absent a showing in the record that the trial court has abused its discretion. Montgomery v. State, 810 S.W.2d 372, 379
(Tex. Crim. App. 1990). Generally, a witness's credibility cannot be impeached with prior acts of misconduct unless the
misconduct resulted in a final conviction of a felony offense or a crime of moral turpitude. See Tex. R. Evid. 609(a); Veteto
v. State, 8 S.W.3d 805, 815 (Tex. App.--Waco 2000, pet. ref'd). Although evidence of arrests or pending charges may be
admissible to show improper motive or bias, Cantu, as the proponent of the evidence, did not argue that the evidence of the
other charges should be admissible for that purpose or otherwise establish a "causal connection or logical relationship
between the pending charges and [Hernandez's] "vulnerable relationship" or potential bias or prejudice for the State." 
Carpenter v. State, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). 

 Even if the trial court abused its discretion in disallowing the cross-examination, Cantu cannot demonstrate that she was
harmed by the trial court's ruling. Officer Larry Fuentes previously testified that Hernandez was in possession of money
from a separate aggravated robbery when he was questioned regarding the aggravated robbery of the victim in the instant
case. Officer Fuentes testified that Hernandez was arrested the day he was questioned for the other aggravated robbery. On
cross-examination, Officer Fuentes further testified regarding the other aggravated robbery charges as follows:

 Q. Did you have information that those two other confessed robbers [Hernandez and Gomez] were involved in other
robberies or thefts?

 A. Can you repeat the question?

 Q. The two, there is Rogelio [Hernandez] and Isaias [Gomez], had confess[ed] to [the victim's] robbery, did you have
information that they were involved in a ring of other robberies?

 A. Yes, sir.

 Q. Did you file charges against them for that other ring of several robberies?

 A. I believe the Rio P.D. filed charges and Investigator Roberto Molina filed charges also.



Accordingly, the evidence of the other pending robbery charges against Hernandez was already before the jury to consider.

7. In her final issue, Cantu asserts that trial counsel was ineffective in failing to timely file the election for punishment by
jury because it deprived her of the ability to be sentenced to probation. Cantu asserts that trial counsel's failure was based on
his mistaken understanding of the law. To establish that her trial attorney was ineffective in failing to timely file the
election, Cantu was required to bring forward sworn evidence in the record establishing that she was eligible for probation. 
See State v. Recer, 815 S.W.2d 730, 731 (Tex. Crim. App. 1991); Beyince v. State, 954 S.W.2d 878, 880 (Tex.
App.--Houston [14th Dist.] 1997, no pet.). The record contains no such evidence. Although Cantu included an affidavit
from her trial attorney in an appendix to her brief, an appellate court must determine a case on the record as filed and cannot
consider documents attached as exhibits or appendices to briefs. Blank v. State, 172 S.W.3d 673, 675 n.1 (Tex. App.--San
Antonio 2005, no pet.). Without a proper record, we cannot find Cantu's trial attorney was ineffective. Rylander v. State,
101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). This opinion should not preclude Cantu from raising her ineffective
assistance claim in an application for post-conviction writ of habeas corpus which must be filed in the trial court. See
Thompson v. State, 9 S.W.3d 808, 814-15 (Tex. Crim. App. 1999) (noting recourse available via an application for writ of
habeas corpus); Tex. Code Crim. Proc. Ann. art. 11.07, § 3(b) (Vernon 2005) (providing that an application for writ of
habeas corpus after final conviction in a felony case must be filed with the clerk of the court in which the conviction being
challenged was obtained).

 The trial court's judgment is affirmed.

 Alma L. López, Chief Justice

DO NOT PUBLISH

1. The use of a tape back-up is a common practice for court reporters in the preparation of any record to correct notes taken
at trial and to make the record as accurate as possible. See Routier v. State, 112 S.W.3d 554, 565 (Tex. Crim. App. 2003). 
This is not a case involving the electronic recording of the proceedings. See Tex. R. App. P. 34.6(f) (noting conditions
under which new trial is permitted where proceedings are electronically recorded and recording is inaudible).

2. From the court reporter's summary, the tape appears to have stopped at the end of the closing argument by Mr. Garza and
did not start recording again until the trial judge was excusing the jury after it had been polled regarding its verdict.

3. We note that the facts in this case are readily distinguishable from a situation where the attorneys and the court reporter
are present in their usual places in the courtroom, and nothing about the situation puts the attorney on notice that the court
reporter may not be in a position to hear or record the bench conferences. 

4. Although Cantu relies on Bond v. State, 694 S.W.2d 622 (Tex. App.--Beaumont 1985, pet. ref'd), to assert a new trial is
proper when the court reporter was incapable of recording a portion of the proceedings because the attorney was speaking
really fast, Bond was decided prior to the Texas Court of Criminal Appeals' decisions in Valle andWilliams.