ACCEPTED
07-15-00118-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
11/20/2015 3:23:25 PM
Vivian Long, Clerk

# IN THE COURT OF APPEALS FOR THE
## SEVENTH COURT OF APPEALS DISTRICT OF TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

11/20/2015 3:23:25 PM

VIVIAN LONG
CLERK

| | | |
|---|---|---|
| **JACOB JORDANN BRIGHT,** | § | |
| **APPELLANT** | § | |
| | § | |
| **V.** | § | **NO. 07-15-00118-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **APPELLEE** | § | |

*APPEALED FROM CAUSE NUMBER 1306330D IN THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY, TEXAS; THE HONORABLE ELIZABETH BEACH, JUDGE PRESIDING.*

## § § §
## STATE'S BRIEF
## § § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR
Chief, Post-Conviction

STEVEN W. CONDER, Assistant
Criminal District Attorney
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No. 04656510
COAAppellatealerts@tarrantcountytx.gov

MICHELE HARTMANN, Assistant
Criminal District Attorney

Oral Argument
Requested Only If
Appellant Granted
Oral Argument

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ...........................................................................................iii

STATEMENT OF THE CASE................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 1

SUMMARY OF STATE'S REPLIES ..................................................................... 6

STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER ONE:
    SUFFICIENCY ................................................................................................ 8

    A.    Standard of Review ........................................................................ 8
    B.    Sufficient Evidence Murder Occurred in Course of Robbery
        or Attempted Robbery ..................................................................10
    C.    Sufficient Evidence of Intent to Kill...........................................14
    D.    Conclusion......................................................................................20

STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO:
    CAPITAL MURDER INSTRUCTION ........................................................21

    A.    Trial Court Properly Defined Capital Murder ............................22
    B.    Any Error Not Reversible .............................................................24

STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO-A:
    FELONY MURDER INSTRUCTION..........................................................30

STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO-B:
    POSSIBLE DOUBT INSTRUCTION..........................................................32

STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER THREE:
    ADMISSION OF TEXT MESSAGES ..........................................................34

    A.    Proper Admission of Text Messages............................................35
    B.    Any Error Not Reversible .............................................................39

CONCLUSION AND PRAYER ...............................................................43

CERTIFICATE OF SERVICE .................................................................43

CERTIFICATE OF COMPLIANCE ........................................................44

# INDEX OF AUTHORITIES

CASES                                                                                          PAGES

*Acosta v. State,*
    429 S.W.3d 621 (Tex. Crim. App. 2014) .................................................................... 9

*Almanza v. State,*
    686 S.W.2d 157 (Tex. Crim. App. 1984) ................................................ 21, 25, 33

*Blanton v. State,*
    2004 WL 3093219 (Tex. Crim. App. 2004) ........................................................ 31

*Brooks v. State,*
    323 S.W.3d 893 (Tex. Crim. App. 2010) ............................................................... 8

*Brown v. State,*
    270 S.W.3d 564 (Tex. Crim. App. 2008), *cert. denied,*
    556 U.S. 1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009) ..................................... 9

*Charlton v. State,*
    334 S.W.3d 5 (Tex. App. - Dallas 2008, no pet.) ................................................ 15

*Clayton v. State,*
    235 S.W.3d 772 (Tex. Crim. App. 2007) ............................................................ 10

*Conner v. State,*
    67 S.W.3d 192 (Tex. Crim. App. 2001) ....................................................... 13, 36

*Davis v. State,*
    2005 WL 2100446 (Tex. App. - Fort Worth
    August 31, 2005, pet. refused) ........................................................................... 18

*Gardner v. State,*
    2015 WL 4652718 (Tex. App. - Fort Worth
    August 6, 2015, pet. refused) .............................................................................. 36

*Garrett v. State,*
    851 S.W.2d 853 (Tex. Crim. App. 1993)....................................................... 11

*Gigliobianco v. State,*
    210 S.W.3d 637 (Tex. Crim. App. 2006)...................................................... 37

*Hall v. State,*
    970 S.W.2d 137 (Tex. App. - Amarillo 1998, pet. refused)................................ 14

*Hart v. State,*
    89 S.W.3d 61 (Tex. Crim. App. 2002) .......................................................... 15

*Hernandez v. State,*
    969 S.W.2d 440 (Tex. App. - San Antonio 1998, pet. refused) ......................... 13

*Herrin v. State,*
    125 S.W.3d 436 (Tex. Crim. App. 2002)....................................................... 13

*Hicks v. State,*
    2015 WL 4462277 (Tex. App. - Dallas  July 21, 2015, pet. refused) .............. 17

*Hinds v. State,*
    970 S.W.2d 33 (Tex. App. - Dallas 1998, no pet.) ........................................ 39

*Hooper v. State,*
    214 S.W.3d 9 (Tex. Crim. App. 2007) ............................................................ 9

*Ibanez v. State,*
    749 S.W.2d 804 (Tex. Crim. App. 1986)....................................................... 11

*Jones v. State,*
    944 S.W.2d 642 (Tex. Crim. App. 1996) *cert. denied,*
    522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997)................................ 17, 18

*Joseph v. State,*
    2013 WL 2149779 (Tex. App. - Houston [14th Dist.]
    May 16, 2013, pet. refused)............................................................... 37, 38

*Kirsch v. State,*
    357 S.W.3d 645 (Tex. Crim. App. 2012)........................................................ 22

*Laster v. State,*
    275 S.W.3d 512 (Tex. Crim. App. 2009)........................................................ 10

*Linden v. State,*
    347 S.W.3d 819 (Tex. App. - Corpus Christi-Edinburg
    2011, pet. refused) ........................................................................................ 17

*Martinez v. State,*
    924 S.W.2d 693 (Tex. Crim. App. 1996)........................................................ 22

*Matthews v. State,*
    __ S.W.3d __, 2015 WL 4076960 (Tex. App. - Fort Worth
    July 2, 2015, no pet.)..................................................................................... 33

*Mays v. State,*
    318 S.W.3d 368 (Tex. Crim. App. 2010) *cert. denied,*
    562 U.S. 1274, 131 S.Ct. 1606, 179 L.Ed.2d 3513 (2011)................................ 15

*Medina v. State,*
    7 S.W.3d 633 (Tex. Crim. App. 1999) *cert. denied,*
    529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000)................................. 26

*Montez v. State,*
    2006 WL 916437 (Tex. App. - Houston [14th Dist.]
    April 6, 2006, pet. refused)............................................................................ 31

*Montgomery v. State,*
    810 S.W.2d 372 (Tex. Crim. App. 1991)........................................................ 35

*Mosley v. State,*
    983 S.W.2d 249 (Tex. Crim. App. 1998) *cert. denied,*
    526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999*)* ............................... 16

*Motilla v. State,*
    78 S.W.3d 352 (Tex. Crim. App. 2002) .......................................................... 39

*Nelson v. State,*
    2015 WL 1757144 (Tex. Crim. App. April 15, 2015) ............................................ 37

*Ngo v. State,*
    175 S.W.3d 738 (Tex. Crim. App. 2005) ................................................. 22, 24

*Nolen v. State,*
    872 S.W.2d 807 (Tex. App. – Fort Worth 1994), *pet. refused,*
    897 S.W.2d 789 (Tex. Crim. App. 1995) .................................................... 37

*Obigbo v. State,*
    6 S.W.3d 299 (Tex. App. - Dallas 1999, no pet.) ...................................... 15

*Patrick v. State,*
    906 S.W.2d 481 (Tex. Crim. App. 1995) *cert. denied,*
    517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996) ........................ 26, 27

*Pitonyak v. State,*
    253 S.W.3d 834 (Tex. App. - Austin 2008, pet. refused) ....................... 15, 17

*Posey v. State,*
    966 S.W.2d 57 (Tex. Crim. App. 1998) ..................................................... 31

*Powell v. State,*
    189 S.W.3d 285 (Tex. Crim. App. 2006) ................................................... 35

*Reyes v. State,*
    ___ S.W.3d ___, 2015 WL 7008130 (Tex. App. - Fort Worth
    November 12, 2015) ..................................................................... 15, 17, 37

*Riddle v. State,*
    888 S.W.2d 1 (Tex. Crim. App. 1994), *cert. denied,*
    514 U.S. 1068, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995) ........................ 22

*Rogers v. State,*
    991 S.W.2d 263 (Tex. Crim. App. 1999)............................................................ 36

*Sholars v. State,*
    312 S.W.3d 694 (Tex. App. - Houston [1st Dist.] 2009, pet. refused)............. 17

*Solomon v. State,*
    49 S.W.3d 356 (Tex. Crim. App. 2001) ............................................................... 39

*State v. Mechler,*
    153 S.W.3d 435 (Tex. Crim. App. 2005)......................................................... 35, 37

*Strickland v. State,*
    2012 WL 955374 (Tex. App. - Fort Worth March 22, 2012, no pet,)............... 14

*Threadgill v. State,*
    146 S.W.3d 654 (Tex. Crim. App. 2004).......................................................... 15, 23

*Torres v. State,*
    794 S.W.2d 596 (Tex. App. - Austin 1990, no pet.)......................................... 36

*Turner v. State,*
    805 S.W.2d 423 (Tex. Crim. App. 1991) *cert. denied,*
    502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991)......................................... 23

*Vasquez v. State,*
    389 S.W.3d 361 (Tex. Crim. App. 2012).............................................................. 25

*Villareal v. State,*
    453 S.W.3d 429 (Tex. Crim. App. 2015)............................................................... 24

*Vosberg v. State,*
    80 S.W.3d 320 (Tex. App. - Fort Worth 2002, pet. refused) ........................ 32, 33

*Wawrykow v. State,*
    866 S.W.2d 87 (Tex. App. - Beaumont 1993, pet. refused) ............................... 15

*Whitaker v. State,*
     977 S.W.2d 869 (Tex. App. - Beaumont 1998, pet. refused) ............................. 14

*White v. State,*
     2011 WL 3612213 (Tex. App. - El Paso August 17, 2011, no pet.)........... 11, 12

*Wood v. State,*
     2001 WL 1047073 (Tex. App. - Dallas September 13, 2001, no pet.) ............ 24

*Wyatt v. State,*
     23 S.W.3d 18 (Tex. Crim. App. 2000) ........................................................9, 18

*Yzaguirre v. State,*
     394 S.W.3d 526 (Tex. Crim. App. 2013)........................................................ 26

## STATUTES

Tex. Code Crim. Proc. art. 36.14................................................................................ 31

Tex. Penal Code §15.01(a)......................................................................................... 10

Tex. Penal Code §19.02(b) ........................................................................................ 22

Tex. Penal Code §19.03(a)(2) ........................................................................10, 15, 22

Tex. Penal Code §29.01(1) ........................................................................................ 11

Tex. Penal Code §29.02(a)......................................................................................... 10

## RULES

Tex. R. App. P. 44.2(b) .............................................................................................. 39

Tex. R. Evid. 403 ....................................................................................................... 35

IN THE COURT OF APPEALS FOR THE
SEVENTH COURT OF APPEALS DISTRICT OF TEXAS

JACOB JORDANN BRIGHT,         §
     *APPELLANT*               §
                              §
V.                             §       NO.   07-15-00118-CR
                              §
THE STATE OF TEXAS,          §
     *APPELLEE*               §

*APPEALED FROM CAUSE NUMBER 1306330D IN THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY, TEXAS; THE HONORABLE ELIZABETH BEACH, JUDGE PRESIDING.*

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

A jury convicted the appellant of capital murder. (C.R. I:296, 301; R.R. VI:133). The trial court sentenced him to life confinement. (C.R. I:301; R.R. VI:135-36).

## STATEMENT OF FACTS

On November 19, 2012, the appellant borrowed Beatrice Olvera's car and drove to the Southgate Manor Apartments on East Seminary Drive in Fort Worth, Texas. (R.R. IV:83, 115, 117). The appellant was dressed in jeans and a black jacket. (R.R. IV:87).

1

At the Southgate Manor Apartments, the appellant ran into childhood friend, Brian Mason, and his son. (R.R. IV:31-32). Mr. Mason's son was playing with a black Halloween mask that covered his face except for eye openings. (R.R. IV:33). Intrigued, the appellant asked Mr. Mason if he could have the mask. (R.R. IV:34). Mr. Mason refused and walked off. (R.R. IV:34). Mr. Mason threw the mask into the street as he drove away from the Southgate Manor Apartments. (R.R. IV:34).

While inside Mechelle Patterson's apartment, the appellant talked to Floyd McCoy about getting some money. (R.R. IV:83, 85). The appellant decided to rob someone using his .22 Ruger revolver. (R.R. IV:86). The appellant and Mr. McCoy left Ms. Patterson's apartment and went in the breezeway. (R.R. IV:87-88). The men appeared to be waiting for someone to come through the breezeway. (R.R. IV:88). Mr. McCoy soon returned alone to Ms. Patterson's apartment. (R.R. IV:90).

About this time, Islander Tavira and Maria Rodriguez, along with two of her children, returned to the Southgate Manor Apartments with dinner from the grocery store. (R.R. III:28, 66). A short African-American man dressed in black clothes and with a mask covering his face approached Mr. Tavira from the breezeway. (R.R. III:28, 37, 74-76). The man pointed his gun at Mr.

2

Tavira and demanded money. (R.R. III:28-29, 77-79). Mr. Tavira told the man that he did not have any money, but the man repeated his request. (R.R. III:78).

At this point, Ms. Rodriguez' young son, Jovani, darted past the man towards their apartment. (R.R. III:28, 79). The man chased after Jovani through the breezeway with Mr. Tavira and Ms. Rodriguez in pursuit. (R.R. III:28-29, 80-81). At this point, the man (identified by Mechelle Patterson as the appellant) turned toward Mr. Tavira and fired multiple gunshots at him. (R.R. III:29, 84; IV:92). Mr. Tavira fell to the ground and died while the appellant ran away. (R.R. III:87; IV:93).

Brian Mason observed the appellant running near his house, which was not far from the Southgate Manor Apartments. (R.R. IV:35). The appellant seemed excited or startled. (R.R. IV:36). The appellant asked for help, but Mr. Mason and his friends ran him off. (R.R. IV:36).

Rashad Holloway, another childhood friend, picked up the appellant off Seminary Drive near Brian Mason's house and drove him to Ms. Olvera's apartment. (R.R. IV:54, 56-57, 65-66). The appellant was "amped up" when Mr. Holloway arrived. (R.R. IV:64). The two men waited at Ms. Olvera's apartment until she arrived home. (R.R. IV:59, 120).

The appellant would not tell Ms. Olvera where he had left her car, but said that Mr. Holloway would take her to it. (R.R. IV:59, 120). Mr. Holloway drove Ms. Olvera to a location near the Southgate Manor Apartments where the appellant had parked her car. (R.R. IV:59-60, 122-23).

That night, the appellant told Ms. Olvera that he had done "something stupid". (R.R. IV:119). He later told her that he went to the apartment complex to rob someone, but became scared when he thought the man recognized him and pulled the trigger. (R.R. IV:128-29).

The police recovered fifteen latent fingerprints from a white Mercury Cougar parked in the Southgate Manor Apartments parking lot near Ms. Rodriguez' truck. (R.R. IV:150). Nine fingerprints matched the appellant, one fingerprint matched Mr. Tavira, and the remaining five fingerprints were inconclusive. (R.R. IV:211-13).

Deputy Medical Examiner Marc Krouse conducted an autopsy on Mr. Tavira's body. (R.R. V:76). Dr. Krouse determined that Mr. Tavira was struck by four gunshots, and he recovered three projectiles from his body. (R.R. V:78-79). Mr. Tavira suffered the following wounds from these gunshots:

1.    A graze wound to his right shoulder which damaged his skin;

2. An entry wound at the base of his neck just above the collarbone which caused a lethal injury to his aorta;

3. An entry wound to his left lower axilla below his armpit which damaged his bowels; and

4. An entry wound to his left elbow which fractured his upper arm bone.

(R.R. V:80-83). Dr. Krouse classified Mr. Tavira's death as a homicide caused by the gunshot wound above his collarbone with contribution from the gunshot wound to his abdomen. (R.R. V:83-84).

The appellant denied shooting Islander Tavira or even being present during this shooting. (R.R. V:60). He admitted being in Ms. Patterson's apartment at the Southgate Manor Apartments late that afternoon to sell Floyd McCoy drugs and a .22 Ruger revolver. (R.R. V:62-64). The appellant then said he left for a nearby apartment complex. (R.R. V:65).

The appellant further testified that he later got into a physical altercation with Mr. McCoy after he complained that the .22 Ruger revolver did not work. (R.R. V:72). After a brief fight, the appellant stated that he ran towards Mr. Mason's house. (R.R. V:72).

## SUMMARY OF STATE'S REPLIES

*Sufficiency:*

Sufficient evidence supports the appellant's capital murder conviction; specifically, evidence establishes that he intentionally killed Islander Tavira while in the course of robbing or attempting to rob him.

*Jury Charge - Capital Murder Instruction:*

The trial court properly defined capital murder, including its intentional culpable mental state. Alternatively, any error regarding the trial court's definition did not cause the appellant egregious harm.

*Jury Charge - Felony-Murder Instruction:*

The trial court was not required to *sua sponte* instruct the jury on the lesser offense of felony-murder.

*Jury Charge - Possible Doubt Instruction:*

The trial court did not err by instructing the jury that the prosecution was not required to prove guilt beyond all possible doubt.

*Admission of Text Messages:*

The trial court properly admitted text messages between the appellant and his brother because their probative value was not substantially outweighed by the danger of unfair prejudice. Alternatively, any error is not reversible.

## STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER ONE: SUFFICIENCY

Appellant's Contention:

The appellant contends that the evidence is insufficient to support his conviction because the evidence does not establish that he committed the murder in the course of committing robbery or aggravated robbery and because there was no evidence of a specific intent to kill.

State's Reply:

Sufficient evidence supports the appellant's capital murder conviction; specifically, evidence establishes that he intentionally killed Islander Tavira while in the course of robbing or attempting to rob him.

Arguments and Authorities:

### A. Standard of Review

In reviewing a sufficiency complaint, the appellate court should examine the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the alleged offense's essential elements beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902,

912 (Tex. Crim. App. 2010).  Direct evidence of the elements of the offense is not required.  *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).  Juries are permitted to make multiple reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.  *Hooper v. State*, 214 S.W.3d at 14–16.

Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence alone can be sufficient.  *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).  In circumstantial cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; rather, it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.  *Acosta v. State*, 429 S.W.3d at 625.

The jury as factfinder is the sole judge of the weight and credibility of the evidence presented, and is free to believe or disbelieve any testimony.  See *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 556 U.S. 1211, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009); *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).  The appellate court presumes that the jury resolved any conflicting inferences in favor of the prosecution, and defers to

that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

So long as the verdict is supported by a reasonable inference, it is within the

jury's province to choose which inference is most reasonable. *Laster v. State,*

275 S.W.3d 512, 523-24 (Tex. Crim. App. 2009).

**B.     Sufficient Evidence Murder Occurred in Course of Robbery or Attempted Robbery**

A person commits capital murder if he intentionally commits murder in

the course of committing or attempting to commit kidnapping, burglary,

robbery, aggravated sexual assault, arson, obstruction or retaliation. **Tex.**

**Penal Code §19.03(a)(2)**.     A person commits robbery if, in the course of

committing theft and with intent to obtain or maintain control of the property,

he intentionally, knowingly, or recklessly causes bodily injury to another; or

he intentionally or knowingly threatens or places another in fear of imminent

bodily injury or death. **Tex. Penal Code §29.02(a)**.  A person commits an

offense if, with specific intent to commit an offense, he does an act amounting

to more than mere preparation that tends but fails to effect the commission of

the offense intended. **Tex. Penal Code §15.01(a)**.

Since committing murder and an unrelated taking or attempted taking

10

of property do not alone constitute capital murder, the State must prove a nexus between the murder and the theft or attempted theft. See *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986). The robbery statute defines the phrase "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft". **Tex. Penal Code §29.01(1)**. This same definition of "in the course of committing" applies to the capital murder statute. *Ibanez v. State*, 749 S.W.2d at 807. Thus, the State must show that the murder occurred during the commission or attempted commission of the underlying theft or while in immediate flight therefrom. See *Ibanez v. State*, 749 S.W.2d at 807.

A capital murder offense is not temporally limited to the time during which the defendant committed the robbery. *White v. State*, 2011 WL 3612213, at *5 (Tex. App. - El Paso August 17, 2011, no pet.) (not designated for publication), *citing Garrett v. State*, 851 S.W.2d 853, 856 (Tex. Crim. App. 1993). A capital murder's chronology includes the moments of the defendant's flight from the scene immediately following the robbery's commission. *White v. State*, 2011 WL 3612213, at *5.

The following evidence demonstrates a clear nexus between the attempted robbery and the fatal shooting:

- A short African-American man dressed in black clothes and with a mask covering his face approached Mr. Tavira from a breezeway at the Southgate Manor Apartments. (R.R. III:28, 37, 74-76).

- The man pointed his gun at Mr. Tavira and demanded money. (R.R. III:28-29, 77-79).

- Mr. Tavira told the man that he did not have any money, but the man repeated his request. (R.R. III:78).

- At this point, Ms. Rodriguez' young son, Jovani, darted past the man towards their apartment. (R.R. III:28, 79).

- The man chased after Jovani through the breezeway with Mr. Tavira and Ms. Rodriguez in pursuit. (R.R. III:28-29, 80-81).

- At this point, the man (identified by Mechelle Patterson as the appellant) turned toward Mr. Tavira and fired multiple gunshots at him. (R.R. III:29, 84; IV:92).

- Mr. Tavira fell to the ground and died while the appellant ran away from the apartment complex. (R.R. III:87; IV:93).

- The appellant told his girlfriend, Beatrice Olvera, that he shot Mr. Tavira because he thought that he recognized him. (R.R. IV:128-29).

In sum, this evidence demonstrates that the appellant murdered Islander Tavira while in the course of attempting to rob him or in his immediate flight therefrom. See *White v. State*, 2011 WL 3612213, at \*5 (evidence that

12

defendant shot victim as he was fleeing the scene of a robbery sufficient to establish capital murder).

The State must further show that the defendant's intent to rob was formulated before or at the time of the murder.  *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).   In other words, if a jury can rationally conclude that the defendant formed his intent to obtain control over the victim's property before or during the commission of the murder, the evidence will support a conclusion that the murder occurred in the course of robbery.  See *Hernandez v. State*, 969 S.W.2d 440, 444 (Tex. App. - San Antonio 1998, pet. refused).

The following evidence shows that the appellant planned this robbery before he shot and killed Islander Tavira:

- The appellant was intrigued with Brian Mason's son's black Halloween mask, and asked Mr. Mason if he could have the mask. (R.R. IV:33-34).

- After meeting with Floyd McCoy, the appellant decided to use his .22 Ruger revolver to rob someone.  (R.R. IV:85-86).

- The appellant and Mr. McCoy went into the breezeway where he waited for someone to pass by them.  (R.R. IV:87-88).

- The appellant came from the breezeway, approached Mr. Tavira in the parking lot, pointed his gun at him, and demanded money. (R.R. III:28-29, 74-79).

13

- The appellant subsequently came running from the breezeway into the apartment courtyard where he turned toward Mr. Tavira and fired multiple gunshots at him. (R.R. III:29, 84; IV:92).

- Mr. Tavira fell to the ground and died while the appellant ran away from the apartment complex. (R.R. III:87; IV:93).

Put simply, the appellant formulated his robbery intent before Mr. Tavira's murder. See *Whitaker v. State*, 977 S.W.2d 869, 873 (Tex. App. - Beaumont 1998, pet. refused) (testimony that defendant and others planned robbery beforehand establishes that he formulated robbery plan before murder occurred); *Strickland v. State*, 2012 WL 955374, at 6-7 (Tex. App. - Fort Worth March 22, 2012, no pet,) (not designated for publication) (evidence that defendant, armed with a loaded weapon, entered motel room with intent to commit theft shows he formulated robbery plan before murder occurred). See also *Hall v. State*, 970 S.W.2d 137, 141-42 (Tex. App. - Amarillo 1998, pet. refused) (contemporaneous theft from murder victim sufficient to establish that defendant had intent to rob at the time of the murder).

## C.      Sufficient Evidence of Intent to Kill

A person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit kidnapping, burglary,

robbery, aggravated sexual assault, arson, obstruction or retaliation. **Tex. Penal Code §19.03(a)(2)**. Capital murder is a "result of conduct" offense, which means the culpable mental state relates to the result of the conduct – causing the murder. *Mays v. State*, 318 S.W.3d 368, 387 (Tex. Crim. App. 2010), *cert. denied*, 562 U.S. 1274, 131 S.Ct. 1606, 179 L.Ed.2d 3513 (2011). Put another way, capital murder requires an intent to kill. See *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004).

Direct evidence of intent is not required. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Reyes v. State*, ___ S.W.3d ___, 2015 WL 7008130, at *5 (Tex. App. - Fort Worth November 12, 2015). A defendant's intent may be inferred from his acts, words and conduct. *Reyes v. State*, 2015 WL 7008130, at *5; *Charlton v. State*, 334 S.W.3d 5, 12 (Tex. App. - Dallas 2008, no pet.). The jury may consider events that occurred before, during, and after the offense in determining intent. *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex. App. - Austin 2008, pet. refused). Finally, jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence. See *Obigbo v. State,* 6 S.W.3d 299, 305 (Tex. App. - Dallas 1999, no pet.); *Wawrykow v. State*, 866 S.W.2d 87, 88–

89 (Tex. App. - Beaumont 1993, pet. refused).

The following evidence supports the jury's finding that the appellant intentionally committed this capital murder:

- The appellant planned an armed robbery to obtain some money. (R.R. IV:85).

- Armed with his .22 Ruger revolver, the appellant waited in a breezeway for a passerby. (R.R. IV:87-88).

- The appellant pointed his gun at Islander Tavira and twice demanded money. (R.R. III:28-29, 77-79).

- While chasing after young Jovani Rodriguez, the appellant turned toward Mr. Tavira and fired multiple gunshots at him. (R.R. III:28-29, 79-81, 84; IV:92-93).

- Mr. Tavira was struck by four gunshots of which three entered his body. (R.R. V:78-79).

- Mr. Tavira died from a fatal gunshot wound at the base of his neck just above his collarbone which lacerated his aorta. (R.R. V:80-81, 83-84).

- The appellant told Beatrice Olvera that he shot Mr. Tavira because he thought that he recognized him. (R.R. IV:128-29).

Given this evidence, the jury rationally concluded that the appellant intentionally caused Mr. Tavira's death. See *Mosley v. State*, 983 S.W.2d 249, 251-55 (Tex. Crim. App. 1998) (finding that capital murder defendant intentionally caused victim's death supported by evidence he planned the

16

robbery, brought a firearm to accomplish the robbery, and shot victim in the back of the head from a short distance), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999*); Hicks v. State*, 2015 WL 4462277, at \*16-17 (Tex. App. - Dallas July 21, 2015, pet. refused) (not designated for publication) (evidence that defendant shot victim in the head at close range sufficient for jury to conclude that he intended to cause victim's death); *Linden v. State*, 347 S.W.3d 819, 822 (Tex. App. - Corpus Christi-Edinburg 2011, pet. refused) (evidence that defendant fired four shots hitting victim in the back of head and neck sufficient to support jury's intent to kill finding).

A jury may also infer a defendant's intent to kill from his use of a deadly weapon, unless it would be unreasonable to infer that death or serious bodily injury could result from its use. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); *Reyes v. State*, 2015 WL 7008130, at \*5; *Pitonyak v. State*, 253 S.W.3d at 844. When a deadly weapon is fired at close range, and death results, the law presumes an intent to kill. *Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App. - Houston [1st Dist.] 2009, pet. refused).

There is no dispute that the a .22 Ruger revolver is a deadly weapon or that Mr. Tavira died from the gunshot wound to his upper chest. (R.R. V:80-

17

81, 83-84). Likewise, there is ample evidence that the appellant fired this fatal gunshot that killed Mr. Tavira. (R.R. IV:92-93). Thus, the jury had a sufficient basis to find that the appellant had the intent to kill. See *Jones v. State*, 944 S.W.2d at 647 (jury may infer intent to kill from evidence that defendant planned the robbery and brought a deadly weapon to accomplish the task); *Davis v. State*, 2005 WL 2100446, at *5 (Tex. App. - Fort Worth August 31, 2005, pet. refused) (not designated for publication) (jury could infer intent to kill from fact that defendant employed a handgun in his attempt to rob the victim).

The appellant denied shooting Islander Tavira or even being present at the Southgate Manor Apartments when Mr. Tavira was shot. (R.R. V:60). The jury, however, was free to disbelieve this testimony. See *Wyatt v. State*, 23 S.W.3d at 30 (jury may believe or disbelieve any testimony in its role as the exclusive judge of the credibility of witnesses and the weight to be given their testimony).

Furthermore, other evidence undercuts the appellant's denials:

- The appellant formulated a robbery plan in order to obtain some money. (R.R. IV:85-86).

- Armed with his .22 Ruger revolver, the appellant waited in the breezeway of the Southgate Manor Apartments for a potential

18

victim.  (R.R. IV:87-88).

- The appellant approached Islander Tavira from the breezeway, pointed his gun at him, and twice demanded money.  (R.R. III:28-29, 74-79).

- When young Jovani Rodriguez darted by, the appellant began chasing him.  (R.R. III:28-29, 79-80).

- The appellant turned and fired multiple gunshots at Mr. Tavira.  (R.R. III:29, 84; IV;92-93).

- Mr. Tavira died from one of these gunshot wounds.  (R.R. V:80-81, 83-84).

- The appellant fled the murder scene on foot until he was able to get Rashad Holloway to drive him home.  (R.R. IV:56-57, 93).

- The appellant was "amped up" when Mr. Holloway arrived to drive him home.  (R.R. IV:64).

- The appellant had Mr. Holloway drive Beatrice Olvera to a location near the Southgate Manor Apartments where he had parked her car.  (R.R. IV:59-60, 120, 122-23).

- The appellant told Ms. Olvera that he went to the Southgate Manor Apartments to rob someone.  (R.R. IV:128).

- The appellant told Ms. Olvera that he shot the man because he thought the man recognized him.  (R.R. IV:128-29).

- The police recovered fifteen latent fingerprints from a white Mercury Cougar parked in the Southgate Manor Apartments parking lot near Ms. Rodriguez' truck.  (R.R. IV:150).

- Nine fingerprints matched the appellant, one fingerprint matched Mr. Tavira, and the remaining five fingerprints were inconclusive.

19

(R.R. IV:211-13).

Given this other evidence, the jury acted within its rights to reject the appellant's denials and find that he intentionally killed Islander Tavira while in the course of attempting to rob him.

**D.    Conclusion**

The evidence sufficiently establishes that the appellant intentionally killed Islander Tavira while in the course of attempting to rob him or in immediate flight therefrom.

The appellant's point of error number one should be overruled.

## STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO: CAPITAL MURDER INSTRUCTION

### Appellant's Contention

The appellant contends that the trial court improperly defined capital murder too broadly by not limiting its murder definition or including a specific intent to kill instruction.

### State's Response

The trial court properly defined capital murder, including its intentional culpable mental state. Alternatively, any error regarding the trial court's definition did not cause the appellant egregious harm.

### Argument and Authorities

Jury charge error claims are analyzed under the two-pronged *Almanza*[1] test:

1. Whether error exists.
2. If error exists, whether sufficient harm resulted from the error to compel reversal.

---

1  See *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (opinion on rehearing).

*Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). If no error exists, the reviewing court's analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

## A.     Trial Court Properly Defined Capital Murder

The trial court defined the terms "capital murder" and "murder" as follows:

> Our law provides that a person commits the offense of murder if he intentionally causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.
>
> A person commits the offense of capital murder if the person intentionally commits the offense of murder in the course of committing or attempting to commit robbery.

(C.R. I:289). These definitions each tracked the statutory language for these criminal offenses. <u>See</u> **Tex. Penal Code §§19.02(b), 19.03(a)(2**). A jury charge which tracks the statutory language for an offense set out by the Texas Legislature is a proper charge on the statutory issue and will not be deemed error on the trial court's part. *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1068, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995).

Capital murder requires proving a defendant's intent to kill.  See

*Threadgill v. State*, 146 S.W.3d at 665.  In light of this requirement, the trial

court limited the culpable mental state for jury consideration of capital

murder with the following language:

if the person intentionally commits the offense of murder

(C.R. I:289).

Furthermore, abstract definitions must be examined in the context in

which the defined term appears, and cannot be limited to portions of the

charge standing alone.  *Turner v. State*, 805 S.W.2d 423, 430 (Tex. Crim. App.

1991), *cert. denied*, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991).  The

application paragraph required the jury to find that the appellant intentionally

caused Mr. Tavira's death, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or
> about the 19th day of November, 2012, in Tarrant County, Texas, Jacob
> Jordann Bright, did then and there intentionally cause the death of an
> individual, Islander Tavira, by shooting him with a firearm, and the said
> defendant was then and there in the course of committing or attempting
> to commit the offense of robbery, then you will find the defendant guilty
> of capital murder as charged in the indictment.

(C.R. I:291).

In sum, the abstract definition of capital murder required the jury to

find that appellant intentionally committed the murder and the application

paragraph required the jury to find that appellant intentionally murdered Islander Tavira; thus, the trial court's instructions properly limited the jury's capital murder consideration. See *Wood v. State*, 2001 WL 1047073, at *7 (Tex. App. - Dallas September 13, 2001, no pet.) (not designated for publication) (abstract definition and application paragraph requiring jury to find intentional murder excluded jury from considering "knowingly" mental state included in murder definition).

Finally, the capital murder statute does not require a specific intent to kill instruction where the abstract definition and application paragraph have limited jury consideration to intentional murder. See *Wood v. State*, 2001 WL 1047073, at *8.

The appellant's point of error number two should be overruled.

## B.     Any Error Not Reversible

The degree of harm required for jury charge error to be reversible error depends on whether the error was preserved in the trial court. *Villareal v. State,* 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d at 743. The appellant did not object to the trial court's capital murder and murder definitions. (R.R. VI:103).

24

Unobjected-to error in the jury charge will not result in a reversal unless it is so egregious and created such harm that the defendant did not have a fair and impartial trial. *Almanza v. State*, 686 S.W.2d at 171. The actual degree of "egregious" harm must be assayed in light of the jury charge itself, the state of the evidence including contested issues, the argument of counsel and any other relevant information revealed by the trial record as a whole. *Almanza v. State*, 686 S.W.2d at 171.

Any error arising from the jury instruction's abstract definitions is not egregious because the application paragraph correctly limited the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of November, 2012, in Tarrant County, Texas, Jacob Jordann Bright, did then and there intentionally cause the death of an individual, Islander Tavira, by shooting him with a firearm, and the said defendant was then and there in the course of committing or attempting to commit the offense of robbery, then you will find the defendant guilty of capital murder as charged in the indictment.

(C.R. I:291).

The application paragraph is the "heart and soul" of the jury charge. See *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012) (application paragraph is that portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts

25

and the indictment allegations).  It is the application paragraph of the charge, and not the abstract portion, that authorizes a conviction.  *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).  As explained by the Court of Criminal Appeals:

> [T]he application paragraph is what, as a practical manner, authorizes the jury to convict but is not necessarily determinative of what legally authorizes a conviction. The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case. We look at the wording of the application paragraph to determine whether the jury was correctly instructed in accordance with the indictment and also what the jury likely relied upon in arriving at its verdict, which can help resolve a harm analysis.

*Yzaguirre v. State*, 394 S.W.3d at 530.  Where the application paragraph correctly instructs the jury on the law applicable to the case, it mitigates against a finding that error in the abstract portion was egregious.  See *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000); *Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996).

The application paragraph herein specifically instructed the jury that, in order to convict the appellant of capital murder, it must find beyond a reasonable doubt that he intentionally caused Islander Tavira's death.  (C.R.

26

I:291).  Thus, it correctly instructed the jury on the applicable law, which militates against any egregious harm finding.  See *Patrick v. State*, 906 S.W.2d at 493.

The record does not establish egregious harm because there is ample evidence showing that the appellant intentionally shot and killed Islander Tavira:

- On November 19, 2012, the appellant borrowed Beatrice Olvera's car and drove to the Southgate Manor Apartments on East Seminary Drive in Fort Worth, Texas.  (R.R. IV:83, 115, 117).

- At the Southgate Manor Apartments, the appellant ran into Brian Mason whose son was playing with a black Halloween mask that covered his face except for eye openings.  (R.R. IV:31-33).

- Intrigued, the appellant asked Mr. Mason if he could have the mask.  (R.R. IV:34).

- Inside Mechelle Patterson's apartment, the appellant formulated a robbery plan to obtain some money.  (R.R. IV:85-86).

- Armed with his .22 Ruger revolver, the appellant waited in the breezeway of the Southgate Manor Apartments for a potential victim.  (R.R. IV:87-88).

- About this time, Islander Tavira and Maria Rodriguez, along with two of her children, returned to the Southgate Manor Apartments with dinner from the grocery store.  (R.R. III:28, 66).

- The appellant (with a mask covering his face) approached Mr. Tavira from the breezeway, pointed his gun at him, and twice demanded money.  (R.R. III:28-29, 74-79).

- When young Jovani Rodriguez darted by, the appellant began chasing him through the breezeway with Mr. Tavira and Ms. Rodriguez in pursuit. (R.R. III:28-29, 79-81).

- The appellant then turned toward Mr. Tavira and fired multiple gunshots at him. (R.R. III:29, 84; IV:92).

- Mr. Tavira was struck by four gunshots of which three entered his body. (R.R. V:78-79).

- Mr. Tavira died from a fatal gunshot wound at the base of his neck just above his collarbone which lacerated his aorta. (R.R. V:80-81, 83-84).

- The appellant fled the murder scene on foot. (R.R. IV:93).

- Brian Mason observed the appellant running not far from the Southgate Manor Apartments. (R.R. IV:35).

- The appellant seemed excited or startled. (R.R. IV:36).

- The appellant asked for help, but Mr. Mason and his friends ran him off. (R.R. IV:36).

- Rashad Holloway picked up the appellant off Seminary Drive and drove him to the apartment he shared with Beatrice Olvera. (R.R. IV:54, 56-57, 65-66).

- The appellant was "amped up" when Mr. Holloway arrived. (R.R. IV:64).

- The appellant had Mr. Holloway drive Ms. Olvera to a location near the Southgate Manor Apartments where he had parked her car. (R.R. IV:59-60, 120, 122-23).

- The appellant told Ms. Olvera that he went to the Southgate Manor

Apartments to rob someone. (R.R. IV:128).

- The appellant told Ms. Olvera that he shot the man because he thought the man recognized him. (R.R. IV:128-29).

- The police recovered fifteen latent fingerprints from a white Mercury Cougar parked in the Southgate Manor Apartments parking lot near Ms. Rodriguez' truck. (R.R. IV:150).

- Nine fingerprints matched the appellant, one fingerprint matched Mr. Tavira, and the remaining five fingerprints were inconclusive. (R.R. IV:211-13).

Finally, the appellant presents no evidence demonstrating that the jury did not use the proper legal definitions in deciding his guilt; let alone, any suggestion that the jury applied this definition in a manner which deprived him of a fair and impartial trial.[2]

The appellant's point of error number two should be overruled.

---

[2] Neither the State nor the defense suggested that the jury should consider any lesser culpable mental state in deciding whether the appellant committed capital murder in Mr. Tavira's death. (R.R. VI:104-32).

## STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO-A: FELONY-MURDER INSTRUCTION

### Appellant's Contention

The appellant contends that the trial court improperly failed to include felony murder within its murder instructions.

### State's Response

The trial court was not required to *sua sponte* instruct the jury on the lesser offense of felony-murder.

### Argument and Authorities

The trial court instructed the jury on the lesser offense of murder as follows:

> Our law provides that a person commits the offense of murder if he intentionally causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.
>
> .....
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of November, 2012, in Tarrant County, Texas, Jacob Jordann Bright, did then and there intentionally cause the death of an individual, Islander Tavira, by shooting him with a firearm, or intended

to cause serious bodily injury to Islander Tavira and committed an act clearly dangerous to human life, by shooting him with a firearm, then you will find the defendant guilty of the lesser included offense of murder.

(C.R. I:289, 292). The appellant did not request a jury instruction on the lesser offense of felony-murder. (R.R. VI:103).

A defendant must object to the jury charge to preserve for appellate review any errors of omissions or complaints that the trial court failed to charge on issues arising from the facts. See *Posey v. State,* 966 S.W.2d 57, 61 (Tex. Crim. App. 1998) (trial court has no duty to sua sponte instruct on defense issues); **Tex. Code Crim. Proc. art. 36.14**. The appellant did not preserve this issue by requesting a jury instruction on felony-murder. See *Montez v. State,* 2006 WL 916437, at *5 (Tex. App. - Houston [14th Dist.] April 6, 2006, pet. refused) (not designated for publication) (defendant has not preserved any argument for inclusion of a felony-murder instruction where he never requested a charge on felony murder; only an instruction on the lesser-included offense of murder).[3]

The appellant's point of error number two-a should be overruled.

---

[3]     See also *Blanton v. State,* 2004 WL 3093219, at *12 (Tex. Crim. App. 2004) (defendant has not preserved for trial court's failure to instruct on felony murder for appellate review where he only requested an instruction on the lesser-included offense of murder).

31

## STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER TWO-B: POSSIBLE DOUBT INSTRUCTION

### Appellant's Contention

The appellant contends that the trial court improperly instructed the jury that the prosecution was not required to prove guilt beyond all possible doubt.

### State's Response

The trial court did not err by instructing the jury that the prosecution was not required to prove guilt beyond all possible doubt.

### Argument and Authorities

The trial court instructed the jury as follows:

It is not required that the prosecution prove guilt beyond all possible doubt. It is required that the prosecution's proof excluded all 'reasonable doubt' concerning the defendant's guilt

(C.R. I:291).

This instruction merely notes that reasonable doubt does not mean all possible doubt, and is not an erroneous "reasonable doubt" definition. *Vosberg v. State*, 80 S.W.3d 320, 324 (Tex. App. - Fort Worth 2002, pet.

32

refused); ***Matthews v. State***, __ S.W.3d __, 2015 WL 4076960, at *1 (Tex. App. - Fort Worth July 2, 2015, no pet.).  There is no reason for this Court to change its long-standing holding that this instruction is not erroneous.  <u>See</u> ***Vosberg v. S***tate, 80 S.W.3d at 324; ***Matthews v. State***, 2015 WL 4076960, at *1.

The appellant's point of error number two-b should be overruled.[4]

---

[4] The appellant did not object to this jury instruction and makes no showing that its inclusion caused him egregious harm or denied him a fair and impartial trial.  <u>See</u> ***Almanza v. State***, 686 S.W.2d at 171.

33

## STATE'S REPLY TO APPELLANT'S POINT OF ERROR NUMBER THREE: ADMISSION OF TEXT MESSAGES

Appellant's Contention:

The appellant contends that the trial court improperly admitted text messages into evidence.

State's Reply:

The trial court properly admitted text messages between the appellant and his brother because their probative value was not substantially outweighed by the danger of unfair prejudice. Alternatively, any error is not reversible.

Arguments and Authorities:

The trial court admitted a series of text messages between the appellant and his brother "Shawn"[5], in which "Shawn":

- Instructs the appellant to get a different phone;

- Tells the appellant that he can "get away with this";

---

[5] "Shawn" was previously identified as the appellant's brother, Thaddeus Shawn Mayfield. (R.R. V:65-66).

34

- Informs the appellant that he intends to make sure that "nobody talkin"; and

- Inquires if anyone saw the appellant, to which the appellant replies "No".

(R.R. VII:State's Exhibits #76-85).

## A.    Proper Admission of the Text Messages

A trial court may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. **Tex. R. Evid. 403**. By using the term "may", this rule's draftsman intended that the trial court be given very substantial discretion in balancing the probative value on the one hand and the unfair prejudice on the other, and that the trial court should not be reversed simply because an appellate court believes that it would have decided the matter differently. *Powell v. State*, 189 S.W.3d 285, 288–89 (Tex. Crim. App. 2006); *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Put another way, decisions involving admission of evidence are reviewed under an abuse of discretion standard and an appellate court should not reverse the trial court's ruling as long as it is at least within the "zone of reasonable disagreement". *Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1991).

Relevant evidence is presumed to be more probative than prejudicial, and such evidence should be excluded under rule 403 only if there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d at 202 (Tex. Crim. App. 2001). "Unfair prejudice" justifying the exclusion means more than a tendency that the evidence will injure or prejudice a defendant's case, which of course is the point of introducing evidence in the first place, but refers to an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); *Gardner v. State*, 2015 WL 4652718, at *2 (Tex. App. - Fort Worth August 6, 2015, pet. refused); *Torres v. State*, 794 S.W.2d 596, 600 (Tex. App. - Austin 1990, no pet.).

In making a rule 403 determination, the factors that a trial court should consider in balancing include:

- The probative force of the evidence;

- The State's need for the evidence;

- Any tendency to suggest a decision on an improper basis or confuse the jury, and

- The likelihood that the presentation of the evidence will consume an inordinate amount of time.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 & n.8 (Tex. Crim. App. 2006);

*State v. Mechler*, 153 S.W.3d at 440.[6]  An analysis of these factors weigh in favor of the trial court's admission of these text messages.

The text messages demonstrate a consciousness of guilt by the appellant in seeking assurances from his older brother that he can "get away" with this murder and that no one will talk about it.  (R.R. VII:State's Exhibits #76-85). As such, these messages have probative value.  See *Joseph v. State*, 2013 WL 2149779, at *2 (Tex. App. - Houston [14th Dist.] May 16, 2013, pet. refused) (not designated for publication) (text message telling accomplice "not to say anyone's name" indicates a consciousness of guilt), *cert. denied*, ___ U.S. ___, 134 S.Ct. 2140, 188 L.Ed.2d 1130 (2014).[7]  Thus, the "probative force" factor weighs in favor of their admission.

---

6    There is no requirement that the trial court place on the record that it has conducted and completed the rule 403 balancing test in its own mind. *Reyes v. State*, 2015 WL 7008130, at *6; *Nolen v. State*, 872 S.W.2d 807, 812 (Tex. App. – Fort Worth 1994), *pet. refused*, 897 S.W.2d 789 (Tex. Crim. App. 1995). The fact that the judge made a proper balancing test can be implied from the record and should be presumed even if the record does not contain a discussion by the court before it overruled a defendant's rule 403 objection. *Reyes v. State*, 2015 WL 7008130; *Nolen v. State*, 872 S.W.2d at 812.

7    See also *Nelson v. State*, 2015 WL 1757144, at *13 (Tex. Crim. App. April 15, 2015) (text message referencing that defendant "had done something bad" probative as consciousness of guilt), *cert. denied*, ___ U.S. ___, 136 S.Ct. 357, ___ L.Ed.2d ___ (2015).

Identity was a central issue in this case in that the appellant denied shooting Islander Tavira or even being present at the Southgate Manor Apartments during this fatal shooting. (R.R. V:60). The State had a need for this evidence because these text messages indicate a consciousness of guilt. See *Joseph v. State*, 2013 WL 2149779, at \*2. Thus, the "need for the evidence" factor weighs in favor of their admission.

The appellant does not articulate any undue tendency arising from the text messages' admission that the jury's guilty verdict was due to an emotional basis or some other improper basis unrelated to the facts of this capital murder. See Appellant's Brief, pages 39-44. Thus, the "undue tendency" factor weighs in favor of their admission.

Finally, the presentation of this evidence was not unduly lengthy. According to the reporter's record time stamp, its entire presentation, including the admissibility challenge, took less than an hour of a week-long jury trial. (C.R. I:300; R.R. V:129-40, VI:6-24). Thus, the "length of time" factor weighs in favor of their admission.

Considering these factors together, the trial court properly determined that the text messages' probative value was not substantially outweighed by the danger of unfair prejudice; thus, it did not abuse its discretion by

38

admitting them into evidence.

The appellant's point of error number three should be overruled.


**B.    Any Error Not Reversible**

The erroneous admission of evidence is generally non-constitutional error and not grounds for reversal unless it affects an accused's substantial rights.  *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); **Tex. R. App. P. 44.2(b)**.  Substantial rights are not affected if the reviewing court has fair assurances that the erroneous exclusion of evidence had no influence or only a slight influence on the jury.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  Put another way, to be reversible, the jury must have been "substantially swayed" by the improperly-admitted evidence.  *Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App. - Dallas 1998, no pet.).  In making this assessment, the reviewing court considers everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record.  *Motilla v. State*, 78 S.W.3d at 355.

The following evidence demonstrates that the admission of the appellant's text messages did not substantially sway the jury in finding that he

intentionally killed Islander Tavira while in the course of attempting to rob him:

- On November 19, 2012, the appellant borrowed Beatrice Olvera's car and drove to the Southgate Manor Apartments on East Seminary Drive in Fort Worth, Texas. (R.R. IV:83, 115, 117).

- The appellant was dressed in jeans and a black jacket. (R.R. IV:87).

- At the Southgate Manor Apartments, the appellant ran into Brian Mason whose son was playing with a black Halloween mask that covered his face except for eye openings. (R.R. IV:31-33).

- Intrigued, the appellant asked Mr. Mason if he could have the mask. (R.R. IV:34).

- While inside Mechelle Patterson's apartment, the appellant formulated a robbery plan to obtain some money. (R.R. IV:85-86).

- Armed with his .22 Ruger revolver, the appellant waited in the breezeway of the Southgate Manor Apartments for a potential victim. (R.R. IV:87-88).

- About this time, Islander Tavira and Maria Rodriguez, along with two of her children, returned to the Southgate Manor Apartments with dinner from the grocery store. (R.R. III:28, 66).

- The appellant (with a mask covering his face) approached Mr. Tavira from the breezeway, pointed his gun at him, and twice demanded money. (R.R. III:28-29, 74-79).

- When young Jovani Rodriguez darted by, the appellant began chasing him through the breezeway with Mr. Tavira and Ms. Rodriguez in pursuit. (R.R. III:28-29, 79-81).

- The appellant then turned toward Mr. Tavira and fired multiple gunshots at him. (R.R. III:29, 84; IV:92).

- Mr. Tavira died from one of these gunshot wounds. (R.R. V:80-81, 83-84).

- The appellant fled the murder scene on foot. (R.R. IV:93).

- Brian Mason observed the appellant running near his house, which was not far from the Southgate Manor Apartments. (R.R. IV:35).

- The appellant seemed excited or startled. (R.R. IV:36).

- The appellant asked for help, but Mr. Mason and his friends ran him off. (R.R. IV:36).

- Rashad Holloway picked up the appellant off Seminary Drive near Brian Mason's house and drove him to the apartment he shared with Beatrice Olvera. (R.R. IV:54, 56-57, 65-66).

- The appellant was "amped up" when Mr. Holloway arrived. (R.R. IV:64).

- The appellant had Mr. Holloway drive Beatrice Olvera to a location near the Southgate Manor Apartments where he had parked her car. (R.R. IV:59-60, 120, 122-23).

- The appellant told Ms. Olvera that he went to the Southgate Manor Apartments to rob someone. (R.R. IV:128).

- The appellant told Ms. Olvera that he shot the man because he thought the man recognized him. (R.R. IV:128-29).

- The police recovered fifteen latent fingerprints from a white Mercury Cougar parked in the Southgate Manor Apartments parking lot near Ms. Rodriguez' truck. (R.R. IV:150).

- Nine fingerprints matched the appellant, one fingerprint matched Mr. Tavira, and the remaining five fingerprints were inconclusive. (R.R. IV:211-13).

- Mr. Tavira was struck by four gunshots of which three entered his body. (R.R. V:78-79).

- Mr. Tavira died from a fatal gunshot wound at the base of his neck just above his collarbone which lacerated his aorta. (R.R. V:80-81, 83-84).

Thus, the appellant's substantial rights were not affected by the admission of these text messages.

The appellant's point of error number three should be overruled.

## CONCLUSION AND PRAYER

The appellant suffered no reversible error.  Therefore, the State prays that his conviction and sentence be affirmed.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR
Chief, Post-Conviction

/s/ Steven W. Conder
STEVEN W. CONDER, Assistant
Criminal District Attorney
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No. 04656510
COAAppellatealerts@tarrantcountytx.gov

MICHELE HARTMANN, Assistant
Criminal District Attorney

## CERTIFICATE OF SERVICE

True copies of the State's brief have been electronically served on opposing counsel, the Hon. William R. Biggs (wbiggs@williambiggslaw.com), 115 West Second Street, Suite 202, Fort Worth, Texas 76102, on this, the 20th day of November, 2015.

43

/s/ Steven W. Conder
STEVEN W. CONDER

<u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e).  It has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes.  This document complies with the word-count limitations of Tex. R. App. P. 9.4(i).  It contains approximately 7747 words, excluding those parts exempted, as computed by Microsoft Office Word 2010.

/s/ Steven W. Conder
STEVEN W. CONDER

c18.bright jacob jordann.br